UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, et al., | Case No. 23-cv-05016-SI |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO REMAND AND REMANDING CASE TO STATE COURT** |
| WASHINGTON TOWNSHIP HEALTH CARE DISTRICT, et al., | Re: Dkt. No. 12 |
| Defendants. | |

Before the Court is plaintiffs' motion to remand. Dkt. No. 12. Defendants oppose. Dkt. No. 15. Pursuant to Civil Local Rule 7-1(b), the Court determines that the motion is suitable for resolution without oral argument, and VACATES the December 8, 2023 hearing. For the reasons set forth below, the Court GRANTS the motion and REMANDS the case to the Superior Court of California, County of Alameda.

## BACKGROUND

This class action lawsuit arises from defendants' alleged violations of plaintiffs' medical privacy rights. Plaintiffs (Jane Doe and Jan Doe), who along with putative class members are patients and users of defendants' services, allege that defendants (collectively "Washington Healthcare")[1] routinely disclose personal information to Facebook and other third parties without their knowledge, authorization, or consent, in violation of laws prohibiting unauthorized disclosure of patients' personally identifiable information and protected health information. Dkt. No. 1-1 ("Compl.") ¶¶ 1, 3, 7, 72.

---

[1] Named defendants include Washington Township Health Care District, Washington Hospital Healthcare System, Washington Hospital, Washington Hospital Healthcare Foundation, and Does 1 through 100. Defendants assert in their notice of removal and opposition to this motion that Washington Hospital Healthcare System and Washington Hospital are wrongly named parties. Dkt. No. 1 ¶¶ 1, 3; Dkt. No. 15 at 7.

1   Defendants operate websites for current and prospective patients that are "designed for

2   interactive communication with patients and users." *Id.* ¶ 51-52. "Defendants also maintain a

3   patient portal, which allows patients to make appointments, access medical records, view lab results,

4   and exchange communications with health care providers." *Id.* ¶ 53. Plaintiffs use defendants'

5   website and patient portal to search for Washington Healthcare doctors, medical treatment, and

6   information about their medical conditions, make appointments, review prescription information,

7   and communicate with health care providers. *Id.* ¶¶ 19, 39. Defendants encourage patients to use

8   digital tools on their websites to "seek and receive health care services." *Id.* ¶ 50.

9   Defendants allegedly disclose patient information through their use of an undetectable

10   tracking pixel (Facebook's "Meta Pixel" tool) embedded on their website and patient portal. *Id.*

11   ¶¶ 5, 41, 56. The tracking pixel automatically transmits personal and identifying information about

12   plaintiffs to Facebook and other third parties. *Id.* ¶¶ 6, 56-57. In addition to tracking pixels,

13   defendants allegedly installed and implemented Facebook's Conversions Application Programming

14   Interface ("CAPI") on their servers. *Id.* ¶ 61. CAPI tracks users' website interactions, records and

15   stores that information on the website owner's servers, and then transmits that data to Facebook. *Id.*

16   ¶ 62. Data received through the tracking pixel and CAPI is used for advertising and marketing

17   purposes. *Id.* ¶¶ 11, 13, 43-45, 63-65. Third parties, such as Facebook or Google, sell plaintiffs'

18   personal health and identifying information to third-party marketers. *Id.* ¶ 67. Plaintiffs allege that

19   defendants "chose to use the Pixel and CAPI data for marketing purposes in an effort to bolster their

20   profits." *Id.* ¶ 64.

21   In their notice of removal, defendants assert that they have "dutifully assisted and followed

22   the federal government's direction" in the government's effort to direct and oversee "a public-

23   private initiative to develop a nationwide infrastructure for health information technology." Dkt.

24   No. 1 ("Notice of Removal") ¶¶ 17-18. According to defendants, the federal government "has

25   incentivized and directed providers who participate in the Medicare and Medicaid programs (like

26   Washington Healthcare) to offer patients online access to their medical records, and to optimize

27   patient engagement with their medical information." *Id.* ¶ 17. Specifically, defendants argue in

28   their opposition to remand that "through the Meaningful Use program and regulations, the federal

United States District Court
Northern District of California

2

government has incentivized and directed health care providers… to offer patients online access to their records and to optimize patient engagement with their medical information, including through the use of patient portals." Dkt. No. 12 at 7.

In 2011, the Centers for Medicare and Medicaid Services established Electronic Health Record Incentive Programs to encourage eligible hospitals to "adopt, implement, upgrade, and demonstrate meaningful use of certified electronic health record technology." *Promoting Interoperability Programs*, CENTERS FOR MEDICARE & MEDICAID SERVICES, https://www.cms.gov/medicare/regulations-guidance/promoting-interoperability-programs.[2]  This incentive program is governed by extensive regulations. 42 C.F.R. § 495. "To qualify for incentive payments… eligible providers and hospitals must demonstrate meaningful use of an electronic health record." THE OFFICE OF THE NATIONAL COORDINATOR FOR HEALTH INFORMATION TECHNOLOGY, *Meaningful Use*, https://www.healthit.gov/faq/what-meaningful-use. Governmental agencies have indicated that institutions "will have better success meeting meaningful use requirements… if [they] integrate a patient portal effectively into [their] practice operations." NATIONAL LEARNING CONSORTIUM, *How to Optimize Patient Portals for Patient Engagement and Meet Meaningful Use Requirements* (May 2013), https://www.healthit.gov/sites/default/files/nlc_how_to_optimizepatientportals_for_patientengagement.pdf.

The meaningful use regulations require that health care providers attest to their compliance with the program. *See* 42 C.F.R. § 495.40. According to an Application Analyst at Washington Township Health Care District ("District"), since 2014, "Washington Healthcare has submitted reports or attestations on its involvement in the Meaningful Use Program to [the Centers for Medicare & Medicaid Services]." Dkt. No. 15-1, Jackson Decl. ¶ 10. Since 2016 these reports have "included submissions regarding the District's patient portal and patients' use of that portal." *Id.* Since 2013, Washington Healthcare hospitals and eligible clinicians have received financial benefit

---

[2] The Meaningful Use Program is now known as the Promoting Interoperability Program. Dkt. No. 15 at 10 n.3.

from the Department of Health & Human Services ("DHHS") in part "for the development and use of the District's patient portal… in accordance with the Meaningful Use Program's criteria." *Id.* ¶ 5. "[F]ailure to meet those criteria would subject the District to financial penalties in the form of reduced Medicare payments from DHHS." *Id.* For the District to meet the Meaningful Use Program requirements, patients allegedly must be aware of the patient portal and understand its benefits and options, and "[o]ne of the ways the District raised awareness and increased usability of its public website and patient portal was by using third-party technologies such as cookies and Facebook pixels on the District's public website." *Id.* ¶¶ 7-9.

Plaintiffs bring California state law and common law claims against defendants and the parties are not diverse.[3] Plaintiffs filed their complaint in the Superior Court of California, County of Alameda on August 18, 2023. *See* Dkt. No. 1-1. Defendants removed this case to federal court pursuant to the federal officer removal statute, 28 U.S.C § 1442(a), arguing that the complaint challenges the legitimacy of actions defendants have taken in connection with pursuing the directive of the federal government to "build a nationwide health information technology infrastructure." Notice of Removal at 1. Plaintiffs move to remand, arguing defendants cannot, and have not, met their burden in establishing federal officer jurisdiction. Dkt. No. 12 at 2.

## LEGAL STANDARD

The federal officer removal statute permits a defendant to remove to federal court a state-court action brought against "any officer (or any person acting under that officer) of the United States or any agency thereof, in an official or individual capacity, for or relating to any act under

---

[3] Plaintiffs allege violations of the California Invasion of Privacy Act (Cal. Penal Code §§ 630, *et seq.*); the Confidentiality of Medical Information Act (Cal. Civ. Code §§ 56.10, 56.101); the Comprehensive Computer Data Access and Fraud Act (Cal. Penal Code § 502); Quasi-Contract/Restitution/Unjust Enrichment; the California Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et seq.*); California Civil Code § 1798,82; Common Law Invasion of Privacy – Intrusion Upon Seclusion; the Information Practices Act of 1977 (Cal. Civ. Code § 1798.1 *et seq.*), and a violation of the California Constitutional Invasion of Privacy (Art. I, sec. I of the California Constitution). *Id.* ¶¶ 14, 391-530. They seek an order enjoining defendants from further unauthorized disclosures of personal information, statutory damages, and attorneys' fees and costs. *Id.* ¶ 16.

color of such office."  28 U.S.C. § 1442(a).  "A party seeking removal under section 1442 must demonstrate that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims, and (c) it can assert a 'colorable federal defense.'" *Durham v. Lockheed Martin Corp*., 445 F.3d 1247, 1251 (9th Cir. 2006) (citing *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999)).[4]

The words "acting under" in the statute are broad, and the Supreme Court "has made clear that the statute must be liberally construed."  *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007).  However, the Supreme Court has also indicated that "broad language is not limitless" and "precedent and statutory purpose make clear that the private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior."  *Id.* at 147, 152 (emphasis in original).  A private person's "compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal official… even if the regulation is highly detailed" and the private person's activities "highly supervised and monitored."  *Id.* at 153.

In determining whether a private person is "acting under" a federal officer for purposes of § 1442(a)(1), courts should consider:  (1) "whether the person is acting on behalf of the officer in a manner akin to an agency relationship," (2) "whether the person is subject to the officer's close direction, such as acting under the subjection, guidance, or control of the officer, or in a relationship which is an unusually close one involving detailed regulation, monitoring, or supervision," (3) "whether the private person is assisting the federal officer in fulfilling basic governmental tasks that the Government itself would have had to perform if it had not contracted with a private firm," and (4) "whether the private person's activity is so closely related to the government's implementation of its federal duties that the private person faces a significant risk of state-court prejudice, just as a government employee would in similar circumstances, and may have difficulty in raising an immunity defense in state court."  *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 756-757 (9th

---

[4] Plaintiffs do not dispute that Washington Healthcare is a "person" within the meaning of the statute.

United States District Court
Northern District of California

Cir. 2022) (internal quotation marks and citations omitted).  The Court considers each factor in turn.

**DISCUSSION**

**I.      Acting on Behalf of Federal Officer in Manner Akin to Agency Relationship**

Plaintiffs argue that defendants' participation in the Meaningful Use Program ("Program") was based on independent business considerations and strategy, and while defendants received incentives for their voluntary participation, there "was no contractual or legal obligation to participate nor to act on behalf of the federal government."  Dkt. No. 12 at 4-5.  Plaintiffs further argue that there is "no evidence that the federal government ordered or directed Washington Healthcare to place [] tracking technologies on its websites [and] patient portal."  *Id.* at 5. Defendants argue that by providing a "financial benefit" to providers like Washington Healthcare for their compliance with the Program, the federal government used such private healthcare providers "to fulfill a federal goal, not merely to regulate" them.  Dkt. No. 15 at 12.  Defendants further argue that the Program "provides a specific framework and guidelines for providers to follow, and the federal government monitors compliance with the program."  *Id*. at 13.

Defendants point the Court to two out-of-circuit cases with nearly identical facts, which the Court addresses under the second factor below.  Although defendants' development of their website and patient portal may have furthered the government's health information technology implementation goals, the Court agrees with plaintiffs that defendants were not acting on behalf of a federal officer in a manner akin to an agency relationship in developing their website and patient portal, much less by implementing the specific tracking technologies at issue.  This factor does not weigh in favor of removal.

**II.      Close Direction or Relationship**

Plaintiffs argue that the Meaningful Use Program does not subject defendants to government control, rather, defendants choose to comply with its guidance.  Dkt. No. 12 at 6.  Plaintiffs contend that the Meaningful Use regulations do not contain "highly detailed specifications for websites or patient portals."  *Id.*  Plaintiffs further argue that the Program "provides criteria that health care

6

providers must meet if they are seeking monetary incentives. And the federal government provides resources and guidance to encourage healthcare providers… to comply with those regulations through incentive payments." *Id.* at 7.

Defendants argue that plaintiffs mischaracterize the requirements of this factor, which only requires that defendants be engaged in efforts to assist or help carry out the government's duties or tasks. Dkt. No. 15 at 16. Defendants further argue that the federal government provided a "specific framework and guidelines" for healthcare providers to follow through the Meaningful Use Program and monitored defendants' compliance with the program through the reports or attestations they submitted. *Id.*

Defendants urge the Court follow *Doe I v. UPMC*, No. 2:20 CV 359, 2020 WL 4381675 (W.D. Pa. July 31, 2020) and *Doe v. ProMedica Health Sys., Inc.*, No. 3:20 CV 1581, 2020 WL 7705627 (N.D. Ohio Oct. 30, 2020) to find that participation in the Meaningful Use Program is sufficient to satisfy the "acting under" requirement of the statute. *See id.* at 16. Both cases have nearly identical facts to the present case. *UPMC*, WL 4381675, at *6 held participation in the Meaningful Use Program constitutes "acting under" a federal superior because the relationship is more like a government contractor relationship and less like a regulator-regulated relationship. *ProMedica*, 2020 WL 7705627, at *3 followed *UPMC* and similarly held that because the defendant's participation in the Meaningful Use Program assisted the federal government in achieving its goal of creating a unified system of patient electronic health records, the defendant satisfied the "acting under" prong of the statute.

Judges in this District have declined to follow *UPMC* and *ProMedica* in nearly factually identical cases. In *Quinto v. Regents of Univ. of California*, No. 3:22 CV 04429, 2023 WL 1448050, at * 1 (N.D. Cal. Feb. 1, 2023), the plaintiff, like plaintiffs here, brought an action against their healthcare provider, arguing her privacy rights were violated by the defendant's unlawful disclosure of her personally identifiable information and protected health information. There, like here, defendants used the "Facebook Tracking Pixel" as a component of its "website analytics practices." *Id.* at *1. Like here, the defendant sought to remove the case pursuant to the federal officer removal statute, arguing they acted under a federal officer by participating in the Meaningful Use Program.

1    *See Id.* at \*2.  Like here, the defendant argued it was "subject to the close direction of a federal

2    officer or agency by virtue of the 'specific framework and guidelines' that the Meaningful Use

3    program sets out for healthcare providers to follow."  *Id.* at \*3.  Judge Donato rejected defendant's

4    arguments, reasoning that "merely being subject to a regulatory scheme is not the same as acting

5    under a federal agency's close direction."  *Id*.  The Court further indicated that the defendant's

6    "heavy reliance" on *UPMC* and *ProMedica* was misplaced and that "these cases entailed an overly

7    broad interpretation of what it means to assist a federal superior with its tasks or duties."  *Id.*

8         The reasoning in *Quinto* was recently followed in *Gibson v. Stanford Health Care*, No. 23-

9    CV-02320, 2023 WL 7413337 (N.D. Cal. Nov. 9, 2023).  *Gibson* again found that *UPMC* and

10   *ProMedica* applied an "overly broad interpretation of the 'acting under' requirements."  *Id.* at \*5.

11   The facts of *Gibson* are also nearly identical to the facts of this case.  There, like here, the plaintiff

12   asserted state law privacy claims on behalf of California residents who had used their healthcare

13   provider's online patient portal, alleging the defendant violated their privacy rights when it

14   integrated the "Facebook Tracking Pixel" into its website.  *Id*. at \*1.  The defendant likewise

15   removed the case pursuant to the federal officer removal statute, arguing it "acted under" the federal

16   government by participating in the Meaningful Use Program.  *Id*. at \*2.  Judge Freeman followed

17   *Quinto* in concluding that the defendant's "voluntary participation in the Meaningful Use Program

18   is insufficient to establish that it was 'acting under' a federal officer when creating and implementing

19   its online portal, and in particular when choosing to integrate the Facebook Tracking Pixel into the

20   portal."  *Id.* at 5.  The Court further noted that "[e]very other district court in this circuit to consider

21   this issue has reached the same result."  *Id.* at \*4 (citations omitted).

22        This Court finds the reasoning of *Quinto* and *Gibson* persuasive and follows them in

23   concluding that defendants' voluntary participation in the Meaningful Use Program is insufficient

24   to establish that they were "acting under" a federal officer when creating and implementing their

25   website and online portal, and in particular when choosing to integrate the tracking pixel and

26   Facebook's CAPI into their website and patient portal.[5]  This Court agrees with the courts in *Quinto*

27   _____

28       [5] This ruling is also consistent with the decisions of numerous other district courts in this
     circuit.  *See., e.g.*, *Crouch v. Saint Agnes Med. Ctr.*, No. 1:22-cv-01527, 2023 WL 6940170, \*2

*(left margin, vertical text)* United States District Court  Northern District of California

8

1   and *Gibson* that the out-of-circuit *UPMC* and *ProMedica* decisions applied an "overly broad

2   interpretation" of the "acting under" requirement and likewise declines to follow them.  "[M]ere

3   compliance with federal directives does not satisfy the 'acting under' requirement of § 1442(a)(1),

4   even if the actions are 'highly supervised and monitored.'"  *Riggs v. Airbus Helicopters, Inc.*, 939

5   F.3d 981, 989 (9th Cir. 2019) (quoting *Watson*, 551 U.S. at 153); *see also Quinto*, 2013 WL

6   1448050, at *3 ("being subject to a regulatory scheme is not the same as acting under a federal

7   agency's close direction").  The close direction or relationship factor thus weighs strongly against

8   removal.

9

10  **III.    Assistance in Basic Governmental Tasks the Government Would Otherwise Have to**

11          **Perform**

12          Plaintiffs argue creating a patient portal page for a private health care provider is not a

13  government task, and although defendants' creation of a patient portal aligns with the government's

14  mission to promote use of health information technology, defendants are not "tasked or mandated

15  by the federal government to achieve that goal." Dkt. No. 12 at 9.  Defendants respond that without

16  their and other private medical providers' actions, the government "would be left alone to complete

17  its federal mission of digitizing health information and increasing engagement with Medicare

18  beneficiaries." Dkt. No. 15 at 16.

19          Defendants point to President Bush's Executive Order 13335 to support their argument that

20  without the use of private entities, the federal government would be responsible for building the

21  electronic records system itself.  *See* Dkt. No. 15 at 17-18.[6]  This Executive Order orders the

22  _____

23  (E.D. Cal. Oct. 20, 2023) (finding that the defendant's compliance with the requirements of the

24  Meaningful Use Program does not show the defendant was "acting under" a federal officer);
    *Valladolid v. Mem'l Health Servs.*, No. CV 23-3007, 2023 WL 4236179, *5 (C.D. Cal. June 27,
    2023) ("this Court joins the majority of district courts and concludes that implementing the

25  Meaningful Use Program is insufficient to establish that Defendant was 'acting under' a federal
    agency"); *Davis v. Hoag Mem'l Hosp. Presbyterian*, No. SACV2300772CJCADSX, 2023 WL

26  4147192, *3 (C.D. Cal. June 23, 2023) ("while the Meaningful Use program may subject private
    entities like Hoag to some degree of government control, simply complying with a law or regulation

27  is not enough to bring a private person within the scope of the statute" (internal quotation marks and
    citations omitted)).

28          [6] Defendants' Request for Judicial Notice at Dkt. No. 16 is GRANTED.

United States District Court
Northern District of California

1    National Health Information Technology Coordinator to "develop, maintain, and direct the

2    implementation of a strategic plan to guide the nationwide implementation of interoperable health

3    information technology." *Id.* at 703.  As district courts in this circuit have explained, this "imposes

4    a duty on the National Coordinator to create a plan—a duty that was carried out by creating a plan

5    that incentivized private firms… to implement such technology voluntarily." *Crouch*, 2023 WL

6    6940170, at * 3.  The financial incentives these private entities receive "are a means of encouraging

7    innovation and adoption of technology, not compensation for carrying out tasks and services for the

8    Government that it would otherwise be charged with doing." *Valladolid*, 2023 WL 4236179, at

9    *12; *see also Quinto*, 2023 WL 1448050, at *2 ("receiving incentive payments for acting in a way

10   that promotes a broad federal interest… is not the same as being contracted to carry out, or assist

11   with, a basic governmental duty").  Defendants have failed to demonstrate they are carrying out

12   governmental tasks the National Coordinator would otherwise do itself by embedding tracking

13   pixels and Facebook's CAPI into their website and patient portal.[7]  This factor also weighs against

14   removal.

15

16   **IV.      Prejudice in State Court**

17          Plaintiffs contend defendants would not face prejudice in state court because defendants did

18   not act under a governmental obligation or duty when implementing the patient portal page and

19   utilizing online tracking tools.  Dkt. No. 12 at 10.  Defendants argue they "face a significant risk of

20   prejudice because this case falls squarely in the essential purpose of the federal officer removal

21   statute—protecting federal operations and programs from interference through state-court

22   litigation." Dkt. No. 15 at 18.

23          The basic purpose of the federal officer removal statute is to protect the federal government

24   from state interference with its operations that would ensue if, for example, a state court could bring

25   officers and agents of the federal government acting within the scope of their authority to trial in

26   _____

27          [7] The Court disagrees with defendants that that their participation in the Meaningful Use
     Program is akin to the government enlisting private contractors to build military equipment or
28   enlisting private carriers to administer federal health benefit plans.  *See* Dkt. No. 15 at 17-18.

United States District Court
Northern District of California

state court.  *Watson*, 551 U.S. at 150.  The statute also addresses concerns that state-court proceedings may reflect prejudice against unpopular federal laws or federal officials, and that states may deprive federal officials of a federal forum in which to assert federal immunity defenses.  *Id.* The Court does not find any of the concerns underlying the statute about state-court prejudice at issue here.  When a private entity subject to a regulatory order complies with that order, it does not necessarily create a risk of state-court prejudice, nor is a state-court lawsuit here likely to hinder government employees in taking necessary action to enforce federal law.  This factor also weighs against removal.

None of the "acting under" factors favor removal.  This Court follows numerous courts in this circuit and district in concluding that defendants are not "acting under" a federal officer by participating in the Meaningful Use Program.  Because the Court concludes that the "acting under" requirement of the federal officer removal statute is not met, the Court need not reach the causal nexus and colorable federal defense requirements of  § 1442 removal.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court GRANTS plaintiffs' motion. This action is REMANDED to the Superior Court of California, County of Alameda.

**IT IS SO ORDERED**.

Dated: December 5, 2023

SUSAN ILLSTON
United States District Judge